**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| LISA A. LEWIS, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) ) | Civil Action No. 20-3431 (FYP) |
| JANET L. YELLEN, | ) ) ) | |
| Defendant. | ) ) ) | |

**MEMORANDUM OPINION**

Plaintiff Lisa Lewis is a 56-year-old Personnel Security Technician at the Department of the Treasury. During her tenure of over twenty years, she has participated in multiple employment-discrimination proceedings. She alleges that those protected activities, in addition to her age, caused her supervisor to deny her advancement opportunities, give her poor performance evaluations, and disproportionately assign her undesirable tasks. Seeking to rectify those wrongs, Lewis brought this suit alleging retaliation, discriminatory hostile work environment, and retaliatory hostile work environment, in violation of Title VII of the Civil Rights Act of 1964 and the Age Discrimination in Employment Act ("ADEA").

Defendant now moves to dismiss Plaintiff's claims. Because Plaintiff's retaliation claims either are not exhausted or are inadequately adverse, the Court will grant Defendant's Motion with respect to those claims. As for Plaintiff's allegations of a hostile work environment, the Court finds that the discriminatory actions and harassment alleged by Lewis are not severe or pervasive under the applicable law, and that she therefore fails to state a claim.

1

## BACKGROUND

Plaintiff Lisa Lewis is a 56-year-old employee of the Department of the Treasury.  *See* ECF No. 13 (Amended Complaint) ¶ 3.  She works as a Grade-4 "Personnel Security Technician" within the Office of Security, which is housed within the Office of the Comptroller of the Currency ("OCC").  *Id.*, ¶¶ 5–6.  In her role, Lewis performs background checks on prospective Treasury employees.  *Id.*, ¶ 11.  For the periods relevant to this case, Plaintiff was supervised by Juan Mestre, Deputy Director of the Office of Security; Mestre's supervisor was David Bell, who served as the Director of the Office of Security.  *Id.*, ¶¶ 7–8.

Plaintiff previously challenged workplace conduct in 2011, 2013, and 2017, which led to Equal Employment Opportunity ("EEO") investigations, a case before the Equal Employment Opportunity Commission, and a previous suit brought in this court.  *See* ECF No. 13-3 (EEO Investigation Report) at 1; Am. Compl., ¶¶ 9, 43–46; *Lewis v. Mnuchin*, No. 16-cv-2437, 2019 WL 120772 (D.D.C. Jan. 7, 2019), *aff'd* 818 Fed. App'x 7 (D.C. Cir. 2020).

In the instant case, Plaintiff alleges that despite strong performance evaluations and a spotless disciplinary record, she was stymied in her efforts to advance at OCC.  *See* Am. Compl, ¶ 12.  First, Plaintiff applied for a Grade-5 "Personnel Security Specialist" position in April 2016.  *Id.*, ¶ 10.  Mestre initially intended to fill the position, but Plaintiff learned that he removed the opening days after she applied.  *Id.*  Second, Plaintiff requested a desk audit so that she could be considered for a promotion, but that was denied "for no apparent reason."  *Id.*, ¶ 28. Third, while Plaintiff was rejected "[o]n almost every occasion she applied for such advancements," her colleagues were not.  *Id.*, ¶¶ 10, 41.  Plaintiff recounts that several Office of Security employees, all younger than age 35, were promoted to Grade 5, one notch above her

2

level.  *Id.*, ¶ 41.  In fact, at the time the Amended Complaint was filed, every other employee in the Office of Security had a position of Grade 5 or higher, even though Plaintiff had the longest tenure in the department.  *Id.*, ¶ 42.  Fourth, in addition to holding the lowest rank, Plaintiff also received the Office of Security's lowest annual "merit pay," which was apportioned by Mestre.  *Id.*, ¶ 49.  Fifth, when Plaintiff sought out professional-development opportunities, she was rebuffed.  *Id.*, ¶¶ 16–24.  In 2016 and 2017, Plaintiff asked to participate in site surveys, which entail assessing the physical security of OCC buildings.  *Id.*, ¶ 18.  Both times, Mestre rejected her requests, either proposing alternatives that never materialized or citing illusory budgetary restrictions.  *Id.*, ¶¶ 20–24.  Because of these denials, Plaintiff claims that her 2016 and 2017 performance reviews suffered, as she could not meet her goal of "assisting with Physical Security Site Survey[s]," which she had set in her Individual Development Plan.  *Id.*, ¶¶ 16–17, 19.

In 2017, Plaintiff received a mid-year evaluation from Mestre, which she believed was "inaccurately critical."  *Id.*, ¶ 34.  After the two of them discussed the review during a "volatile and dramatic" meeting, Mestre revised his evaluation to be "more positive and accurate."  *Id.*, ¶ 35.  The next year, Mestre refused to sit down with Plaintiff for a "one-on-one, in person evaluation," as was customary for mid-year evaluations.  *Id.*, ¶¶ 50–51.  Explaining that he was declining to meet with her because of "her open EEO complaint," which Plaintiff had filed on August 23, 2018, *see* ECF No. 13-1 (Report of Investigation Excerpt) at 4, Mestre instead compiled a performance-review packet for Plaintiff.  *See* Am. Compl., ¶ 51.  Plaintiff claims that her supervisor's refusal to meet with her was "detrimental" to her end-of-year evaluations, her relationship with Mestre, and her general performance.  *Id.*, ¶ 53.

Plaintiff also alleges that Mestre saddled her with undesirable work responsibilities. Beginning in May 2017, Mestre "excessively and disproportionately" assigned Lewis "Type A adjudications," which are "unrewarding," "time-consuming," and required adjudicating cases from start to finish. *Id.*, ¶¶ 29, 33. Although Plaintiff's Grade-4 position specified that she was only to adjudicate parts of cases, she received 22 Type A adjudications during the relevant period of the suit, while her comparable colleagues collectively received three. *Id.*, ¶¶ 11, 30. In November 2017, Plaintiff approached Mestre with a request to be compensated for work above her pay grade. *Id.*, ¶ 31. Mestre then stopped assigning Type A adjudications to Plaintiff and emailed the entire Office of Security that he was "suspending" her from these assignments. *Id.*

Also in November 2017, Plaintiff reported to David Bell, Director of the Office of Security, that Mestre was fostering a hostile work environment. *See* ECF No. 13-2 (Email from Lisa Lewis to David Bell) at 3; Am. Compl., ¶ 46. During a subsequent staff meeting, Mestre directed his attention to Plaintiff and stated that he "was not afraid of an EEO suit" and could hire anyone he wanted. *See* Am. Compl., ¶ 47. After Plaintiff's May 2018 EEO counseling session regarding her complaint against Mestre, Mestre sent "aggressive" group emails. *Id.*, ¶ 48. In one such email, Mestre addressed Plaintiff specifically and stated, "I need for you to let me know what you've been up to lately." Report of Investigation Excerpt at 12; Am. Compl., ¶ 48.

Plaintiff alleges other wrongs that she suffered at Mestre's hand. In 2017, Mestre tasked another co-worker with checking and monitoring her adjudications. *Id.*, ¶ 37. No one else was subjected to the same scrutiny. *Id.* Then, while Plaintiff was teleworking on June 6, 2018, Mestre told her that she was not eligible for remote work and directed her to submit an updated

4

telework request. *Id.*, ¶ 25. Later, the agency's human-resources consultant confirmed that Plaintiff was properly teleworking that day. *Id.*, ¶ 26.

Facing such workplace mistreatment, Lewis contacted an EEO counselor on June 25, 2018. *See* Report of Investigation Excerpt at 3. From there, Plaintiff filed a formal complaint on August 23, 2018. *Id.* at 4. After a pre-discovery evidentiary hearing before an EEOC administrative law judge, her case was dismissed for lack of sufficient evidence. *See* Am. Compl., ¶ 14. Plaintiff then received a final agency decision on August 26, 2020. *Id.*, ¶ 15.

Plaintiff proceeded to file suit on November 24, 2020, and she amended her Complaint on April 2, 2021. *See* ECF No. 1 (Complaint); Am. Compl. In her Amended Complaint, Plaintiff alleges retaliation, age-based discriminatory hostile work environment, and retaliatory hostile work environment, in violation of Title VII and the ADEA. *See* Am. Compl., ¶¶ 55–72. She seeks damages, additional pay, and attorneys' fees and costs. *Id.* at 12–13. On April 30, 2021, Defendant moved to dismiss the Amended Complaint for failure to state a claim, under Federal Rule of Civil Procedure 12(b)(6). *See* ECF No. 15 (Defendant's Motion to Dismiss Amended Complaint).

## LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a complaint must "state a claim upon which relief can be granted." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 552 (2007). Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion, *id.* at 555, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

When considering a motion to dismiss, a court must construe a complaint liberally in the plaintiff's favor, "treat[ing] the complaint's factual allegations as true" and granting the plaintiff "the benefit of all inferences that can be derived from the facts alleged." *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000) (quoting *Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1979)); *accord Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994). Although a plaintiff may survive a Rule 12(b)(6) motion even if "'recovery is very remote and unlikely,'" the facts alleged in the complaint "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555–56 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

## ANALYSIS

Plaintiff brings three types of claims. First, Plaintiff alleges discrete incidents of retaliation against her for bringing claims of employment discrimination in various EEOC proceedings and prior cases. *See* Am. Compl., ¶¶ 47–49, 55–58; 64–68. Second, she claims that Mestre created a hostile work environment that discriminated against her based on her age. *Id.*, ¶¶ 62–63. Third, Plaintiff contends that the hostile work environment was also created in retaliation for her allegations of employment discrimination. *Id.*, ¶¶ 59–61, 69–72.

### I. Retaliation Claims

Defendant argues that Lewis's discrete retaliation claims either are unexhausted or do not rise to the level of a materially adverse employment action. *See* Def. Mot. at 13–18. Before bringing claims in federal court, federal employees generally must first exhaust their administrative remedies. *See* 29 C.F.R. § 1614.105(a)(1); *see also Siegel v. Kreps*, 654 F.2d 773, 776–77 (D.C. Cir. 1981) ("[In a Title VII suit] absent special circumstances, failure to exhaust

calls for a dismissal of the action."); *Rann v. Chao*, 346 F.3d 192, 195 (D.C. Cir. 2003) (explaining exhaustion requirement for pursuing ADEA claims through administrative process).

To exhaust her claims, a federal employee must first contact the EEO counselor at the agency where the employee works within 45 days of the allegedly discriminatory incident, and then participate in an informal EEO counseling or alternative dispute resolution program. *See* 29 C.F.R. §§ 1614.105(a)–(b). If her complaint remains unresolved, she must file a formal discrimination complaint with her employing agency's EEO office. *Id.* § 1614.108(f). Thereafter, she must follow additional procedures before filing a lawsuit,[1] and the lawsuit may only pertain to the claims that were raised in the EEO proceedings.

The exhaustion requirement gives agencies notice of the charge and a chance to remedy the offensive conduct, as well as serving to "narrow the issues for prompt adjudication and decision" *Laffey v. Northwest Airlines, Inc.*, 567 F.2d 429, 472 n.325 (D.C. Cir. 1976) (quoting *Bowe v. Colgate-Palmolive Co.*, 416 F.2d 711, 720 (7th Cir. 1969)); *see Brown v. Marsh*, 777 F.2d 8, 14 (D.C. Cir. 1985). In addition, exhaustion preserves "the EEOC's investigatory and conciliatory role," *Marshall v. Fed. Express Corp.*, 130 F.3d 1095, 1098 (D.C. Cir. 1997) (citation omitted). Thus, "an initial failure to file a timely EEOC charge" or "[a]llowing a complaint to encompass allegations outside the ambit of the predicate EEOC charge" would impermissibly undermine these functions. *Id.* (citation omitted).

The parties agree that Plaintiff did not exhaust her administrative remedies with respect

---

[1] After receiving the agency's decision, the employee has thirty days either to request a hearing before an administrative law judge or to seek a final decision from the agency. *Id.* § 1614.108(f). If an employee elects for her case to be heard by an ALJ, the ALJ will issue a decision, and the agency has forty days to issue a final order, otherwise the ALJ's decision will become the final order of the agency. *Id.* § 1614.109(i). Upon receiving the agency's final order or decision, the employee has thirty days to appeal the decision to the EEOC and ninety days to file a suit in federal court. *Id.* §§ 1614.402, 407.

to any discrete acts that occurred 45 or more days before Plaintiff contacted the EEO counselor on June 25, 2018.  *See* Def. Mot. at 14–16; ECF No. 17 (Plaintiff's Opposition) at 6; Report of Investigation Excerpt at 3 (recording date of contact with EEO counselor as June 25, 2018). Thus, only three of the incidents alleged by Plaintiff were administratively exhausted:[2] (1) Mestre's criticism of Plaintiff's decision to telework on June 5, 2018; (2) his "aggressive" email of June 8, 2018; and (3) his refusal to meet with her to discuss her mid-year performance evaluation in late June and July of 2018.[3]  *See* Pl. Opp. at 6–7.  Plaintiff described these incidents in the formal EEO complaint that she filed on August 23, 2018.  *See* EEO Investigation Report at 1.

With respect to the three alleged incidents of discrete retaliation, Plaintiff must make a *prima facie* case that "(1) that [she] engaged in statutorily protected activity; (2) that [she] suffered a materially adverse action by [her] employer; and (3) that a causal link connects the two." *Jones v. Bernanke*, 557 F.3d 670, 677 (D.C. Cir. 2009) (citing *Wiley v. Glassman*, 511 F.3d 151, 155 (D.C. Cir. 2007)).  Plaintiff fails the second part of this test, which requires her to

---

[2]  Plaintiff's myriad other claims are not exhausted.  These include Mestre's denial of her site-survey requests, his disproportionate Type A adjudications, her mid-year 2017 performance review, and monitoring of her adjudications.  *See* Am. Compl., ¶¶ 20–24, 29–34, 37.
   As for Plaintiff's merit-pay claim, she argues that it was exhausted because it "has been litigated at the EEOC level" and was "brought to the EEO counselor as well."  *See* Pl. Opp. at 7.  The EEO counselor's report does record Plaintiff discussing merit pay.  *See* Report of Investigation at 18–19.  The counselor noted, however, that these allegations are only "relevant to [Plaintiff's] alleg[ed] incidents beginning in June 2018 [as] part of an ongoing pattern of harassment."  *Id.* at 7.  In other words, the merit-pay claims were not exhausted as discrete retaliation claims but were exhausted and can be considered as part of her hostile work environment claims.
[3]  Incidents that occur after an employee contacts her EEO counselor can be exhausted if they are "reasonably related to the allegations of the [administrative] charge."  *Thorne v. Cavazos*, 744 F. Supp. 348, 351 (D.D.C. 1990) (quoting *Anderson v. Block*, 807 F.2d 145, 148 (8th Cir. 1986)) (alteration in original).  Even if Mestre communicated his refusal to discuss Lewis's evaluation with her in person after June 25, 2018, her claims are still exhausted because she alleged that his refusal was in response to her pending EEO complaint.  *See* Am. Compl., ¶ 51; *Thorne*, 744 F. Supp. at 351 ("Courts have held that an act committed by an employer in retaliation for the filing of an EEOC complaint is reasonably related to the complaint, obviating the need for a second EEOC complaint." (citation omitted)).

allege facts that demonstrate a "materially adverse action" by Defendant.  In the retaliation context, a materially adverse action is one that "might have dissuaded a reasonable worker from making or supporting a charge of discrimination."  *Burlington N. and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (cleaned up).  By contrast, "normally petty slights, minor annoyances, and simple lack of good manners will not create such deterrence."  *Id.*  "The D.C. Circuit has indicated that work-related retaliation must have 'tangible job consequences' in order to qualify as materially adverse."  *Wesley v. Georgetown Univ.*, No. 18-1539, 2018 WL 5777396, at *5 (D.D.C. Nov. 2, 2018) (quoting *Taylor v. Solis*, 571 F.3d 1313, 1321 (D.C. Cir. 2009)).  Such consequences include "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant change in benefits."  *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998) (citations omitted).

Here, Mestre's badgering of Plaintiff about her decision to telework on June 5, 2018, does not rise to the level of a materially adverse action under the applicable law.  Plaintiff alleges only that Mestre asked her to resubmit her telework request and mistakenly chided her for improperly teleworking.  *See* Am. Compl., ¶¶ 25–26.  Plaintiff does not claim that she lost any of her leave, and she does not even contend that her telework request was denied.  *Cf. Redmon v. U.S. Capitol Police*, 80 F. Supp. 3d 79, 87 (D.D.C. 2015) ("Courts in this and other jurisdictions have repeatedly held that denial of a telework arrangement on its own does not constitute an adverse employment action."); *see also Beckham v. Nat'l R.R. Passenger Corp.*, 736 F. Supp. 2d 130, 149 (D.D.C.2010) ("Being denied the ability to work from home on, at most, three occasions is a minor annoyance, not an adverse action.").  She thus does not allege any "tangible

9

job consequences" from Mestre's action. *See Taylor v. Solis*, 571 F.3d at 1321.

Similarly, Plaintiff fails to allege facts that could support a finding that Mestre's email on June 8, 2018, was a materially adverse action. According to Plaintiff, Mestre emailed a group of employees and targeted Plaintiff, writing, "I need for you to let me know what you've been up to lately." Report of Investigation Excerpt at 12; Am. Compl., ¶ 48. It is difficult to fathom how a supervisor asking an employee what she has "been up to lately" would deter "a reasonable worker from making or supporting a charge of discrimination." *Burlington N. and Santa Fe Ry. Co. v. White*, 548 U.S. at 57. At most, Mestre's email is in the category of "normally petty slights [and] minor annoyances" that "will not create such deterrence." *Id.* at 68 (citation omitted).

Mestre's refusal to discuss Plaintiff's performance evaluation with her in person also cannot qualify as a materially adverse action. Although Plaintiff alleges that Mestre's refusal to meet with her was "detrimental" to her year-end evaluations, she offers no support for this claim, stating only that an in-person evaluation "gives the supervisor a chance to inform the employee whether he or she is doing well, or if the employee could improve in certain performance areas." Am. Compl., ¶ 52. Of course, a written evaluation can convey the same content as a verbal one, and Plaintiff received her performance evaluation in written form. *Id.*, ¶ 51. Thus, Mestre's refusal to discuss Lewis's performance evaluation with her cannot be a materially adverse action. *See Artis v. District of Columbia*, 51 F. Supp. 3d 135, 140 (D.D.C. 2014) (calling refusal of plaintiff's supervisor to review evaluations with her in person a "petty slight" not covered by Civil Rights Act).

Even in combination, these three incidents cannot qualify as "materially adverse." *Test v.*

*Holder*, 614 F. Supp. 2d 73, 84 (D.D.C. 2009) ("[C]ourts must consider whether based upon the combined effect of . . . alleged events, a reasonable worker could be dissuaded from engaging in protected activity") (cleaned up).  At bottom, these three individual events were mere "petty slights [and] minor annoyances," and even taken together, they did not cause Plaintiff to suffer any material adversity.  *Burlington N. and Santa Fe Ry. Co. v. White*, 548 U.S. at 68.  By contrast, cases where courts have found adversity involve more severe conduct, such as verbal assaults and significant changes in work responsibilities.  *See, e.g.*, *Mogenhan v. Napolitano*, 613 F.3d 1162, 1166–67 (D.C. Cir. 2010) (concluding that supervisor posting plaintiff's EEO complaint on intranet and increasing her workload to "five to six times that of other employees" was adverse); *Test v. Holder*, 614 F. Supp. 2d at 85–86 (holding jury could find adversity when supervisor reduced plaintiff's workload after learning of his EEO complaint and said plaintiff's EEO activity was "killing" him).[4]

Plaintiff posits that "a motion to dismiss should not be granted for [her] retaliation claims based on a purported lack of adverse action," since determining "whether a particular employment action is materially adverse is fact intensive."  Pl. Opp. at 14.  To support this proposition, Plaintiff primarily relies on cases where employees were reassigned to different duties.  *See id.* at 14–15; *Czekalski v. Peters*, 475 F.3d 360, 365 (D.C. Cir. 2007) ("Whether a particular *reassignment of duties* constitutes an adverse action . . . is generally a jury question.") (emphasis added); *Mamantov v. Jackson*, 898 F. Supp. 2d 121, 128–29 (D.D.C. 2012) (involving

---

[4] Lewis contends that she does not need to show "only employment-related adverse actions to qualify for retaliation" and that the applicable standard is whether "the alleged incidents would have dissuaded a reasonable worker from making or supporting a charge of discrimination."  Pl. Opp. at 13–14.  She is correct in stating this standard, and indeed, it is the one that the Court uses here.  *See supra* at 9.  Moreover, she does not rely on any actions that were not employment related.

reassignment of plaintiff's coordinating and scheduling tasks); *see also Hunter v. D.C. Child and Family Sers. Agency*, 710 F. Supp. 2d 152, 159 (D.D.C. 2010) (requiring plaintiff to pay for fitness-for-duty exam and denying his alternative work schedule). But the facts of those cases are readily distinguishable — none of Plaintiff's exhausted claims concern reassignment or any other action that arguably involved a tangible job consequence.[5] Moreover, courts regularly dismiss retaliation claims where the complaint fails to allege employment actions that can be considered materially adverse. *See, e.g.*, *Aldrich v. Burwell*, 197 F. Supp. 3d 124, 127 (D.D.C. 2016) (granting motion to dismiss because workplace monitoring at issue was not materially adverse); *Koch v. Schapiro*, 699 F. Supp. 2d 3, 14 (D.D.C. 2010) (dismissing claim after determining that supervisor's yelling and requests for medical documentation were not materially adverse). Because Plaintiff fails to allege facts that could support a finding of a materially adverse employment action, she fails to state a claim of discrete retaliation.[6]

## II. Hostile Work Environment

Plaintiff also alleges that she was subjected to a hostile work environment, both on

---

[5] Plaintiff attempts to argue that she suffered tangible job consequences when Mestre allegedly assigned her a disproportionate number of Type A adjudications. *See* Pl. Opp. at 14. Mestre, however, allegedly made these assignments in 2017, and the incidents were not exhausted through the administrative process. *See* Am. Compl., ¶¶ 29–31. As a result, they cannot buttress Lewis's discrete retaliation claims.

In addition, Plaintiff alleges that Mestre removed an opening for a Grade-5 position days after she applied. *See* Am. Compl., ¶ 10. Although failure to promote clearly constitutes an "adverse employment action," *Douglas v. Donovan*, 559 F.3d 549, 552 (D.C. Cir. 2009), this claim was not exhausted, and in any case, the position was never filled. *See* Am. Comp., ¶ 10; Def. Mot. at 15. This incident, therefore, cannot be considered and does not support an inference that Plaintiff was not selected on account of her age.

[6] Plaintiff's Amended Complaint alleges that Mestre was aware of Plaintiff's age and implies that Mestre discriminated against Plaintiff by promoting younger, less experienced employees instead of her. *See* Am. Compl. ¶¶ 38–42. Plaintiff distills the issue into the plaintive query: "Is Plaintiff just that unlucky, or is there another reason why she was never selected for any career enhancing opportunity at the Treasury Department?" Pl. Opp. at 2. But Plaintiff fails to bring a separate age-discrimination claim, and instead includes this argument in support of her claims of retaliation and hostile work environment. The Court may not consider Mestre's failure to promote Plaintiff as a discrete incident of retaliation because Plaintiff did not exhaust her administrative remedies before bringing that claim. Nor does this speculative argument support Plaintiff's claim of a hostile work environment, which requires evidence of severe or pervasive harassment. *See infra* at 14–15.

account of her age, and in retaliation for her engagement in protected activity. *See* Am. Compl., ¶¶ 59–61, 62–63, 69–72. Under Title VII and the ADEA, the government is barred from discriminating against its employees with respect to the "terms, conditions, or privileges of employment" because of age. *See* 29 U.S.C. §§ 623(a)(1); *see also id.* ¶ 633a(a) ("All personnel actions affecting [executive agency] employees . . . who are at least 40 years of age . . . shall be made free from any discrimination based on age."). That includes a prohibition on "requiring people to work in a discriminatorily hostile or abusive environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993).

Under Title VII, a hostile work environment can also "amount to retaliation." *Hussain v. Nicholson*, 435 F.3d 359, 366 (D.C. Cir. 2006) (citing *Singletary v. District of Columbia*, 351 F.3d 519, 526 (D.C. Cir. 2003)). For this species of retaliation claim, plaintiffs must have engaged in protected activity, such as filing an EEOC complaint or initiating litigation to vindicate claims of employment discrimination, *see Baloch v. Norton*, 517 F. Supp. 2d 345, 354 (D.D.C. 2007), and must demonstrate "a causal connection between the harassment and [the] protected activity." *Graham v. Holder*, 657 F. Supp. 2d 210, 216 (D.D.C. 2009).[7]

Both types of hostile work environment claims require conduct that is "'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Baloch v. Kempthorne*, 550 F.3d 1191, 1201 (D.C. Cir. 2008) (quoting *Harris*, 510 U.S. at 21) (stating standard for discriminatory hostile work environment claims);

---

[7] Plaintiff must also exhaust her hostile work environment claims. For these claims, courts can consider "the entire time period of the hostile environment . . . for the purposes of determining liability," "[p]rovided that an act contributing to the claim" is exhausted. *See Baird v. Gotbaum*, 662 F.3d 1246, 1251 (D.C. Cir. 2011) (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117 (D.C. Cir. 2011)). Plaintiff argues that her hostile work environment claims are exhausted. *See* Pl. Opp. at 4–6. Because Defendant does not challenge her hostile work environment claims on exhaustion grounds in its Motion, the Court will not devote time to addressing this issue. *See* Def. Mot. at 13–15.

*Román v. Castro*, 149 F. Supp. 3d 157, 166 (D.D.C. 2016) (quoting *Baird v. Gotbaum*, 662 F.3d 1246, 1250 (D.C. Cir. 2011)) (stating standard for retaliatory hostile work environment claims). When determining whether workplace conduct amounts to a hostile work environment, courts consider the totality of the circumstances, including the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris*, 510 U.S. at 23; *accord Faragher v. City of Boca Raton*, 524 U.S. 775, 787–88 (1998); *see also Menoken v. Dhillon*, 975 F.3d 1, 5–6 (D.C. Cir. 2020) ("[I]ndividual acts that may not be actionable on [their] own [can] become actionable due to their cumulative effect." (citation omitted)).

Notably, courts have held that "work-related actions by supervisors" generally cannot sustain hostile work environment claims, since they cannot "be characterized as sufficiently intimidating or offensive in an ordinary workplace context." *Wade v. District of Columbia*, 780 F. Supp. 2d 1, 19 (D.D.C. 2011); *see also Bell v. Gonzales*, 398 F. Supp. 2d 78, 92 (D.D.C. 2005) ("Occasional instances of less favorable treatment involving ordinary daily workplace decisions are not sufficient to establish a hostile work environment."). Examples of "work-related actions by supervisors" include lowered performance evaluations, close scrutiny of assignments, and missed opportunities for travel. *Wade v. District of Columbia*, 780 F. Supp. 2d at 19 (citation omitted); *Munro v. LaHood*, 839 F. Supp. 2d 354, 366 (D.D.C. 2012); *Bell v. Gonzales*, 398 F. Supp. 2d at 92.

Here, Defendant contends that "Plaintiff has failed to adequately plead . . . harassment that was sufficiently severe or pervasive to alter the conditions of her employment and create an

abusive working environment." Def. Mot. at 8. Indeed, all of Plaintiff's allegations fall short. Plaintiff alleges that from 2016 to 2018, Mestre passed her over for a Grade-5 position that was never filled, denied her opportunities to conduct site surveys, badgered her about telework, disproportionately assigned her Type A adjudications, gave her an "inaccurately critical" performance evaluation, awarded her a low amount of merit pay, and enlisted a co-worker to monitor her work. *See supra* 2–5. These allegations plainly fall within the category of "work-related actions by a supervisor" that are insufficiently severe to create a hostile work environment. *See Wade v. District of Columbia*, 780 F. Supp. 2d at 19 (citations omitted); *Munro v. LaHood*, 839 F.Supp.2d at 366 (D.D.C. 2012); *Bell v. Gonzales*, 398 F. Supp. 2d at 92. In addition to these work-related incidents, Plaintiff alleges that Mestre sent "aggressive" group emails. *See* Am. Compl., ¶ 48. Although she claims that Mestre's emails stating that she was not performing to his satisfaction were humiliating, *id.*, the D.C. Circuit has determined that this kind of "trivial incident" is not cognizable under Title VII. *See Baird v. Gotbaum*, 792 F.3d 166, 171 (D.C. Cir. 2015) (reiterating that occasional "rude emails" are "uncognizable under Title VII").[8]

None of the allegations of harassment in the Amended Complaint are comparable to the types of acts that courts have relied upon when allowing hostile work environment claims to proceed. *See, e.g.*, *Brooks v. Grundmann*, 748 F.3d 1273, 1277 (D.C. Cir. 2014) (discussing *Gowski v. Peake*, 682 F.3d 1299 (11th Cir. 2012)) (involving employee who was "shut out from her work because her privileges have been revoked and her duties eliminated")); *Ayissi-Etoh v.*

---

[8] Although Plaintiff alleges that Mestre "frequently sends out group emails," she does not clarify how often he "points out that Plaintiff is not performing to his satisfaction." Am. Compl., ¶ 48. Her Amended Complaint includes only a single example of such an email, which was sent by Mestre on June 5, 2018, and stated, "I need for you to let me know what you've been up to lately." *Id.*

15

*Fannie Mae*, 712 F.3d 572, 577 (D.C. Cir. 2013) (involving plaintiff who was called "deeply offensive racial epithet"); *Singletary*, 351 F.3d at 528 (involving plaintiff who was assigned to work in physically punishing environment).  In objective terms, therefore, the incidents pled by Plaintiff do not amount to a hostile work environment.  *See Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998).  For this reason, the Court will dismiss Plaintiff's discriminatory and retaliatory hostile work environment claims.

## CONCLUSION

For the foregoing reasons, the Court will grant Defendant's Motion to Dismiss.  A separate Order will issue this day.

Florence Y. Pan
United States District Judge

Date:   November 19, 2021